SHER TREMONTE LLP

December 23, 2024

**BY ECF**

The Honorable Jennifer E. Willis
United States Magistrate Judge
Southern District of New York
40 Foley Square, Room 425
New York, New York 10007

Re: *In Re: Extradition of Eran Hiya*, 1:24-mj-1971

Dear Judge Willis:

We represent Eran Hiya. We write in response to the Court's December 12, 2024 order (Dkt. No. 29) directing additional briefing regarding pretextual motivation by the government in commencing a legal action against a defendant. As detailed below, the government generally may not use pretext as a cloak for unconstitutional conduct. Fourth Amendment doctrine is an exception to this general rule, but for reasons that are plainly inapplicable to this case. Here, the government's deceptive reliance on a pretextual passport fraud case to circumvent its treaty obligations with Malaysia and orchestrate Mr. Hiya's presence in the district differentiates this case from *In re David*, 390 F. Supp. 521 (E.D. Ill. 1975), where the criminal charges brought against the extraditee were indisputably legitimate. Rather, this case is like *Matter of Extradition of Atta*, No. 87-0551-M, 1988 WL 66866, (E.D.N.Y. June 17, 1988) (*Atta I*), where the court found that the government's illegal circumvention of its treaty obligations violated due process and international comity.

    A. *Courts Routinely Inquire into the Motives of Government Actors to Determine Whether the Government's Actions Are Pretextual in the Due Process Context*

As explained in Mr. Hiya's Memorandum of Law in Opposition to Extradition ("Mem."), the government's duplicitous circumvention of its treaty obligations to Malaysia violated Mr. Hiya's due process rights and international comity, and thus deprives this Court of jurisdiction. Mem. at 20-24. Among these violations was that the government obtained Malaysia's consent to Mr. Hiya's forcible removal from Malaysia through the material omission of the fact that it would immediately seek Mr. Hiya's extradition to Israel upon his arrival in the United States. This deceptive scheme included, among other manipulations, the government's indictment of Mr. Hiya on trivial passport fraud charges so as to furnish a pretext for the government's demand for Mr. Hiya's removal from Malaysia.

When assessing whether government action constitutes a violation of the Due Process Clause, the motivations of the relevant governmental actors are central to the

inquiry, and courts routinely examine those motivations when assessing actions including the initiation of otherwise valid criminal charges. For example:

- In the context of vindictive or selective prosecution claims under the Due Process Clause, a criminal charge that is otherwise supported by evidence may nevertheless represent a due process violation where it is motivated by animus. Thus, a plaintiff can succeed by showing that: "(1) the prosecutor harbored genuine animus toward the defendant . . . and (2) he would not have been prosecuted except for the animus." *United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (quoting *United States v. Aviv*, 923 F. Supp. 35, 36 (S.D.N.Y. 1996)). The but-for inquiry under the second prong of this test presupposes that the court inquire into whether a prosecutor's proffered motives for bringing the criminal charges were, in fact, pretexts for prosecutorial animus. While the question of whether the relevant charges are supported by probable cause factors into this inquiry, the mere fact, standing alone, that such charges are supported by probable cause does not suffice to demonstrate that the prosecutorial decision was not pretext for animus against the defendant. *See Young v. United States ex rel. Vuitton et Fils*, 481 U.S. 787, 807 (1987) (due process prohibits the pursuit of a criminal investigation "influenced by improper motives"); *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997) ("[C]ourts have long held that a selective enforcement claim may be available even where there is probable cause for prosecution.").

- Courts have long recognized that procedural due process bars the exercise of civil *in personam* jurisdiction where a defendant has been lured into the jurisdiction through fraud, deceit or artifice. *See Wyman v. Newhouse*, 93 F.2d 313, 315 (2d Cir. 1937) (finding no jurisdiction where civil defendant had been enticed into the district by fraud, because "a fraud affecting the jurisdiction is equivalent to a lack of jurisdiction"). In particular, due process is violated where a prosecutor brings a sham criminal prosecution against a defendant for the covert purpose of effecting civil process on the defendant: "where a criminal action is a mere maneuver for bringing the defendant within the reach of the judicial process of that jurisdiction, and not to serve the ends of public justice, *there is an abuse of process which precludes jurisdiction* [i]n personam." *Klaiber v. Frank*, 9 N.J. 1, 6–7, 86 A.2d 679, 682 (1952) (emphasis added). Here, as in *Klaiber*, the government has violated Mr. Hiya's due process rights by concocting a criminal case for the sole purpose of ensuring that Mr. Hiya was "found" in this district for the purpose of extradition.

- In the prison context, the Due Process Clause entitles an inmate placed in administrative segregation to a hearing to determine whether the inmate's commitment to such segregation is pretextual: "periodic reviews of [administrative segregation] satisfy procedural due process . . . when they

> involve real evaluations of the administrative justification for confinement, they consider all of the relevant evidence that bears on whether that administrative justification remains valid, and they ensure that [administrative segregation] is used as neither a form of punishment *nor a pretext for indefinite confinement.*" *Proctor v. LeClaire*, 846 F.3d 597, 614 (2d Cir. 2017) (emphasis added).

- In the context of a government employee claiming wrongful termination, due process requires a predetermination hearing to probe whether the State has eliminated the employee's position as a pretext, because such hearings have a "deterrent effect on any inclination to use a pretextual announcement of [measures such as administrative reorganization] in order to circumvent an employee's property right not to be removed from his position without due cause." *Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir. 1985), *modified,* 793 F.2d 457 (2d Cir. 1986).

In short, in the due process context, pretext matters. As this case law demonstrates, it is both appropriate and commonplace for a court to inquire into the government's motivations, and root out pretextual action, to determine whether the government has violated an individual's due process rights.

### B. *Pretextual Government Action Is Also Prohibited in the Context of Other Constitutional Violations*

In other areas of constitutional adjudication, precedent similarly bars the government from relying on pretextual justifications for its actions, including the following examples:

- The most familiar treatment of pretext in constitutional law is *Batson v. Kentucky*, 476 U.S. 79 (1986), which charges courts with probing whether the government's stated reasons for striking jurors are pretexts for racial discrimination, in violation of the Equal Protection Clause.

- Also in the equal protection context, a facially neutral law that serves as a pretext for racial discrimination is subject to heightened scrutiny and is typically invalidated. *E.g.*, *Yick Wo v. Hopkins*, 118 U.S. 356, 374 (1886).

- A property owner challenging a government exercise of eminent domain under the Fifth Amendment's Takings Clause may succeed by showing that the public use proffered by the government is a "mere pretext" for private development. *See Kelo v. City of New London, Conn.*, 545 U.S. 469, 478 (2005).

- A plaintiff claiming retaliation under the First Amendment may show that the reason for an adverse employment action was pretextual. *See Morales v. City of New York*, 525 F. Supp. 3d 463, 480 (S.D.N.Y. 2021).

      C.      *Motives Are Generally Irrelevant in the Fourth Amendment Context Because of Unique Features of That Amendment's Standard*

At the December 9, 2024 evidentiary hearing, the Court noted that in criminal procedure, it is generally permissible for a law enforcement officer who is pursuing a defendant for a more serious crime to follow a suspect, wait until he commits a trivial traffic offense, and then use that pretextual traffic stop as an opportunity to obtain evidence of the more serious crime. *See* Tr. at 39:8-40:11. The Court's observation references a feature of Fourth Amendment jurisprudence that is not applicable here—the fact that courts employ an objective standard in assessing the reasonableness of government conduct. This aspect of Fourth Amendment doctrine to distinctive features of the Fourth Amendment's text and history. Specifically, pretextual government action is generally not considered a constitutional violation with respect to the Fourth Amendment because courts have adopted a purely objective standard in determining the reasonableness of government searches and seizures. For example, courts will not inquire into the subjective reasons for a police officer's stop of a vehicle and will ask only whether the objective facts known to a reasonable officer would justify the stop. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis). This is because the Fourth Amendment "regulates conduct rather than thoughts" and an objective standard "promotes evenhanded, uniform enforcement of the law." *Ashcroft v. Al-Kidd*, 563 U.S. 731, 736 (2011). That makes sense given that the text of the Amendment prohibits "*unreasonable* searches and seizures." U.S. Const. amend. IV (emphasis added); *accord Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) ("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness . . . .'"); *Blue v. Koren*, 72 F.3d 1075, 1081 (2d Cir. 1995) ("[M]otive is irrelevant" to a Fourth Amendment claim, "because a Fourth Amendment claim must be based on a showing that the search in question was objectively unreasonable.").[1] But, as the foregoing precedent shows, motives that implicate other constitutional violations are not similarly insulated from judicial scrutiny.

      D.      *The Government's Conduct Distinguishes This Case from* In re David

It is thus entirely appropriate for the Court to inquire into the government's motivations and determine whether the government's sham passport fraud case served as a pretext to effect Mr. Hiya's unlawful removal from Malaysia. And the evidence here amply establishes that the passport fraud charges are pretextual, including the timing of

---

[1] Despite this general rule, courts recognize that pretextual government action can represent a Fourth Amendment violation in some contexts. For example, the inventory search exception to the warrant requirement is limited by "the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence," *Florida v. Wells*, 495 U.S. 1, 4 (1990), and the exception does not apply where a defendant can show that the inventory search was a pretext for criminal investigation. *See id.* at 5 (Brennan, J. concurring) (noting danger that "police may use the excuse of an 'inventory search' as a pretext for broad searches of vehicles and their contents"). Mr. Hiya is, of course, not asserting a violation of his Fourth Amendment rights with respect to Israel's extradition request; accordingly, the doctrine regarding pretext and limits on courts' inquiry into motive does not apply here.

their initiation, the government's manipulation of the timing of the Israeli arrest warrant before this Court, and the government's scrubbing of all information relating to the Israel case from its correspondence with Malaysia.[2] The government's attempt to rebut this evidence—by claiming that Mr. Hiya was properly deported—is contradicted by the record. The evidence easily distinguishes Mr. Hiya's case from *In re David*, 390 F. Supp. at 521. In *David*, the court held that the extraditee's allegations of kidnapping by law enforcement agents in Brazil (allegedly at the behest of U.S. law enforcement) did not bar his extradition to France. But in that case, there was no allegation that the serious drug offenses with which the extraditee (who, unlike Mr. Hiya, was not a U.S. citizen) was charged in the U.S. served as a pretext for the government's ultimate goal of extraditing him to France. To the contrary, the court held that the extraditee *had waived his right to challenge the extradition court's jurisdiction by pleading guilty* to those criminal charges prior to the extradition proceeding. *Id.* at 523. No such waiver occurred here; Mr. Hiya has pleaded not guilty to the passport fraud charges and vigorously objected to the circumstances of his transfer from Malaysia.[3] This case is instead on all fours with *Atta I*, where, as here, the government abducted the extraditee from Venezuela for the true (but concealed) purpose of extraditing him to Israel, in violation of procedural due process and international comity.

The Court should accordingly deny the government's motion for extradition.

Respectfully submitted,

/s/ *Noam Biale*
Justine A. Harris
Noam Biale
Wes Erdelack
Krista Staropoli

*Attorneys for Eran Hiya*

---

[2] This is not to concede that the Court must find that the passport fraud case is pretextual in order to hold that due process and international comity were violated here. It need not. Given that the scheme to procure the consent of Malaysian officials to Mr. Hiya's transfer involved material omissions unrelated to its pretextual indictment—most importantly, the government's omission of the fact that it knew Israel would file an extradition request once Mr. Hiya was in the United States. In stating on the record that it had no obligation to inform Malaysia about its ultimate intentions to extradite Mr. Hiya to Israel, the government effectively conceded this material omission at the evidentiary hearing. Tr. at 16:11-17. Omitting this information deprived Malaysia of the ability to make an informed choice about whether to release Mr. Hiya only pursuant to the terms of its extradition treaty. Thus, the government's confessed deceit in its dealings with Malaysia violated Mr. Hiya's due process rights and international comity *even if* the Court were to determine that the initiation of the passport fraud charges was not pretextual.

[3] Moreover, the extraditee in *David* argued that his extradition was barred by the *substantive* due process limits stated in *United States v. Toscanino*, 500 F.2d 267 (2d Cir. 1974). But the better reading of *Toscanino* is as an exception to the *Ker-Frisbie* doctrine, which does not apply to Mr. Hiya's case.