

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

December 23, 2024

**BY CM/ECF**
Honorable Jennifer E. Willis
United States Magistrate Judge
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *In the Matter of the Extradition of Eran Hiya*, 24-mj-1971 (JW)

Dear Judge Willis:

      The Government respectfully submits this letter in response to this Court's order requesting relevant caselaw on the significance of the Government's alleged "pre-textual motivation" in criminally charging Eran Hiya. As the Government understands it, Hiya seeks to oppose his extradition to Israel based on a claim that the United States Government brought criminal charges against Hiya solely as a pretext for facilitating his extradition to Israel. As further discussed below, Hiya's argument fails because caselaw supports that the Government's motive for initiating a criminal action against Hiya is not a relevant issue in this proceeding and implicates foreign policy considerations that are exclusively reserved for the Secretary of State. In addition, courts in other contexts have concluded that the Government's motive for bringing prosecutions is unreviewable except in narrow circumstances that are inapplicable here. Accordingly, the Court should certify Hiya's extraditability to the Secretary of State for a final decision on extradition.

    **I.**    **Background**

      On May 17, 2024, at the request of the Government of Israel, the United States filed a complaint (the "Complaint") for the provisional arrest with a view towards extradition of Hiya pursuant to the extradition treaty between the United States and the Government of Israel (the "U.S.-Israel Extradition Treaty"). At the time the Government filed the Complaint, Hiya had already been charged in this District with one count of conspiracy to unlawfully apply for and attempt to procure U.S. citizenship, in violation of 18 U.S.C. § 371, and with one substantive count of doing the same, in violation of Title 18 U.S.C. § 1425. *See generally United States v. Eran Hiya*, 24 Cr. 282 (the "Passport Fraud Case"). In addition, Hiya was in federal custody and detained at the Metropolitan Detention Center in Brooklyn, New York in connection with the Passport Fraud Case. On May 17, 2024, the Honorable Valerie Figueredo, United States Magistrate Judge for the Southern District of New York, signed the Complaint and authorized the provisional arrest of Hiya (the "Provisional Arrest Warrant"). On May 20, 2024, Hiya appeared at the Daniel Patrick Moynihan United States Courthouse in the Southern District of New York for a bail hearing in the Passport Fraud Case, and law enforcement officers executed the Provisional Arrest Warrant. On that date, after having been order detained in the Passport Fraud Case, Hiya was presented on the Complaint before Your Honor, and ordered detained on consent.

On June 25, 2024, the Government of Israel submitted a formal request for Hiya's extradition (the "Extradition Request") to the United States Department of State. Between September 23, 2024 and November 12, 2024, the Government and Hiya filed memoranda in support of and in opposition to the Extradition Request, respectively. On December 9, 2024, the Court held an extradition hearing pursuant to 18 U.S.C. § 3184.

## II.   Discussion

This Court should reject Hiya's specious claim regarding the Government's motive for initiating a criminal prosecution against Hiya. *First*, Hiya's allegation that the Government initiated a criminal prosecution against him as a pretext to facilitate Israel's extradition implicates questions of foreign policy and diplomatic relations that are specifically reserved for review by the Secretary of State and not part of this Court's inquiry. *Second*, the Government has broad discretion to initiate criminal proceedings, and the Government's motivation for initiating such proceedings is rarely a viable defense against the action itself. In Hiya's criminal proceeding, that is, the Passport Fraud Case, Hiya's claim regarding the Government's "pre-textual motivation" would fail as facially insufficient because Hiya does not allege, much less establish, that he has been singled out for prosecution for a constitutionally impermissible reason, which is what courts in other contexts have considered in assessing such claims. Rather, Hiya concedes that, in initiating the Passport Fraud Case against him, the Government weighed legitimate considerations, such as the severity of the alleged crimes Hiya committed abroad and the United States' diplomatic relationships with the Governments of Malaysia and Israel. Hiya raises no legal authority, and the Government has found none, under which this Court should nevertheless consider the Government's motivation for initiating the criminal proceeding as a jurisdictional bar in a separate and distinct extradition proceeding, especially when such claim would fail in the criminal proceeding itself.

### A.   *Considerations Involving Foreign Policy and Diplomatic Relations Are Reserved For the Secretary of State*

Hiya has repeatedly made speculative claims regarding the Government's motivation for initiating the Passport Fraud Case. In an attempt to impute a motive onto the Government, Hiya invokes the extradition treaty between the United States and the Government of Malaysia (the "U.S.-Malaysia Extradition Treaty") as well as the broader diplomatic relationship between the two nations. Opp. Br. at 16-19.[1] Specifically, Hiya argues that the Government initiated the Passport Fraud Case solely as a "ruse" to induce the Government of Malaysia to release custody of Hiya and to conceal the Government of Israel's interest in extraditing Hiya to Israel. Tr. at 41:9–41:13. *See* Opp. Br. at 20 (describing the Passport Fraud Case as a "pretext for securing [Hiya's] presence in the jurisdiction"); Tr. at 40:16–41:13.

As an initial matter, Hiya's assumptions and speculations about the Government's motives ignore the abundant evidence in the Passport Fraud Case that Hiya committed the alleged crimes.[2] Further, this Court's jurisdiction over Hiya falls squarely under the plain text of 18 U.S.C. § 3184, which plainly and unequivocally grants personal jurisdiction over *any* fugitive found within the jurisdiction of the Court. There are no exceptions suggested in the statute, nor does the statute contemplate any inquiry into how the fugitive came to be within a court's jurisdiction, and the

---

[1] Unless otherwise specified, "Opp. Br." refers to Hiya's memorandum of law in opposition to extradition (Dkt. 20). "Reply Br." refers to the Government's reply memorandum in support of extradition. "Tr." refers to the December 9, 2024 extradition hearing transcript.

[2] As referenced in the Government's reply memorandum, the Government has produced discovery in the Passport Fraud Case in accordance with its discovery obligations. *See* Reply Br. at 21 n.7.

Government is unaware of any caselaw to the contrary. *See, e.g.*, *Pettit v. Walshe*, 194 U.S. 205, 219 (1904) ("The commissioner or judicial officer here referred to is necessarily one acting as such within the state in which the accused was arrested and found."); *In re Pazienza*, 619 F. Supp. 611, 616 (S.D.N.Y. 1985) ("Pursuant to 18 U.S.C. § 3184, the requested person may be arrested and held in custody once he is found within the jurisdiction of the Court to which application is made by complaint under oath."). This alone should conclude the Court's inquiry.

Nonetheless, Hiya argues that the Government of Malaysia's view of the United States's role in facilitating the Government of Israel's extradition request is relevant to this Court's consideration of personal jurisdiction. But the Government of Israel did not formally request Hiya's extradition until after the Government initiated the Passport Fraud Case, and the Government of Malaysia's position on this matter is simply not something this Court is authorized to consider in determining whether Hiya is extraditable. This is because Government of Malaysia's position implicates the United States' diplomatic relationships with foreign governments — including with both the Governments of Malaysia and Israel. *See* Opp. Br. at 18 (arguing that the Government of Malaysia objects to the United States' conduct and citing statements made by the Prime Minister of Malaysia). Foreign policy considerations fall exclusively within the purview of the Secretary of State and are beyond the scope of this Court's judicial inquiry. *See, e.g.*, *Yoo v. United States*, 43 F.4th 64, 71 (2d Cir. 2022) ("[T]he Secretary of State has sole discretion to weigh the political and other consequences of extradition and to determine finally whether to extradite the fugitive . . . because the question of wisdom of extradition remains for the executive branch to decide.") (internal quotations and citations omitted); *United States v. Kin-Hong*, 110 F.3d 103, 109 (1st Cir. 1997) ("The Secretary may also decline to surrender the relator on any number of discretionary grounds, including but not limited to, humanitarian and foreign policy considerations."); *Matter of Extradition of Sridej*, 649 F. Supp. 3d 987, 992 (D. Nev. 2023) ("A long judicial tradition supports the general judicial policy of deference to the executive in the area of foreign relations" that "comes from the generally accepted view that foreign policy is the province and responsibility of the Executive whose authority in foreign policy derives from Article II of the U.S. Constitution.") (internal quotations and citations omitted). It is for this very reason that courts have recognized that the bifurcated nature of extradition proceedings "reflects the fact that [such] proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch." *United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997). Therefore, such foreign policy considerations have no relevance to this Court's exercise of personal jurisdiction over Hiya.

Similarly, the Government's motivation for initiating a separate criminal prosecution against Hiya is likewise irrelevant in this proceeding. How Hiya came into this Court's jurisdiction before this matter arose is not part of this Court's inquiry and would only be an appropriate consideration if, pursuant to the *Ker-Frisbie* doctrine, Hiya could demonstrate shocking governmental conduct. *See* Reply Br. at 10-14 ("[T]he 'shocking' and 'outrageous' conduct Hiya alleges falls far short of the nature of the conduct raised in *Toscanino*). Accordingly, courts have held that abduction alone is not "shocking governmental conduct" that violates the Due Process. *See United States v. Herbert*, 313 F. Supp. 2d 324, 331 (S.D.N.Y. 2004) (finding that allegations of shocking governmental conduct are "an exception to the general [*Ker-Frisbie*] rule that a defendant cannot challenge the jurisdiction of a court based on the method by which he was brought before it"); *see also David v. Att'y Gen. of U.S.*, 699 F.2d 411, 414 (7th Cir. 1983) (finding a lack of shocking governmental conduct after applying the *Ker-Frisbie* doctrine and retaining jurisdiction in a § 3184 extradition proceeding).

Because Hiya was deported—not abducted—from Malaysia and such "shocking governmental conduct" did not occur here, Hiya relies on the diplomatic implications that Hiya's extradition might have on the relationship between the United States and the Governments of Malaysia and Israel. *See* Reply Br. at 6. However, as discussed above, this line of inquiry directly and more broadly implicates relationships among foreign nations and, as such, is a foreign policy consideration exclusively reserved for the Secretary of State. *See Yoo*, 43 F.4th at 71; *Matter of Extradition of Sutton*, 905 F. Supp. 631, 636 (E.D. Mo. 1995) ("The ultimate decision to surrender the individual falls within the purview of the Executive Branch as part of the Executive's power to conduct foreign affairs and consider factors that may affect foreign policy and relations."); *see also Casey v. Dep't of State*, 980 F.2d 1472, 1478 (D.C. Cir. 1992) (noting the State Department's "latitude in conducting extraditions" and "the judiciary's traditional deference to the executive branch's conduct of foreign affairs"). Despite Hiya's repeated attempts to divert this Court's attention to how the Government obtained custody of Hiya and dissect the United States' communications with Malaysia and Israel—all of which occurred before the Government initiated this extradition proceeding—such issues are not proper considerations for this Court's jurisdictional analysis. The only relevant factor—whether Hiya was found within the jurisdiction of this Court—has been met. *Matter of Sindona*, 584 F. Supp. 1437, 1442 (E.D.N.Y. 1984) (quoting 18 U.S.C. § 3184) (rejecting a challenge to the procedure by which the fugitive was "found" within the jurisdiction because the fugitive was present within the Court's jurisdiction).

## B. The Government's Motivation Is Unreviewable Except in Circumstances That Are Inapplicable Here

Hiya's claim that the Government's criminal prosecution of Hiya was motivated by the Government of Israel's impending extradition request fails because Hiya has not alleged that the Passport Fraud Case arose for a constitutionally impermissible reason. Rather, Hiya asserts that the Government assessed the United States' diplomatic relationships and weighed its treaty obligations as part of exercising its prosecutorial discretion to initiate criminal charges. This Court should disregard any consideration of the Government's motive because the Government's motive is generally not reviewable. *See, e.g.*, *Heckler v. Chaney*, 470 U.S. 821 (1985) (upholding the presumption of unreviewability of agency decisions not to undertake enforcement action and allowing rebuttal only where there are enumerated guidelines for the agency to follow in exercising its enforcement powers); *United States v. Cordones,* No. 11 CR. 205 (AKH), 2022 WL 815229, at *5 (S.D.N.Y. Mar. 17, 2022) ("Absent evidence of discriminatory enforcement, or selective-prosecution that would violate statutory or constitutional rights, the Supreme Court has stated that the decision to prosecute is particularly ill-suited to judicial review and "generally rests entirely in the prosecutor's discretion.") (internal quotation marks omitted). A defendant challenging the Government's decision to prosecute him bears a heavy burden because federal prosecutors retain "broad discretion to enforce the Nation's criminal laws." *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996) (internal quotation marks omitted). As a result, Courts consider challenges to the Government's prosecutorial discretion when a defendant has alleged that the Government was motivated by constitutionally impermissible reasons. *See, e.g.*, *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992) (explaining that a selective prosecution claim requires a defendant to establish that the Government's "selection of the defendant for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights"). Hiya has not raised any such reason in this proceeding. Instead, Hiya mistakenly hypothesizes that the Government's motivation was to circumvent the U.S.-Malaysia Extradition Treaty. Even if Hiya's assumption were true, which it is not, this motive is not

constitutionally impermissible and would not warrant a Court to infringe upon the Government's exercise of its prosecutorial discretion.

To be clear, there is no due process violation in the Government exercising its prosecutorial discretion to criminally charge Hiya in the Passport Fraud Case and then seek to fulfill its obligation to Israel under the U.S.-Israel Extradition Treaty. The due process protections afforded to a fugitive facing extradition are clearly established and have been followed in this proceeding. *See Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 2017 WL 3776953, at *27 (S.D. Fla. Aug. 31, 2017) (quoting *In re Extradition of Burt*, 737 F.2d 1477, 1487 (7th Cir. 1984)) ("Due process is not violated so long as the United States has not breached a specific promise to an accused regarding his or her extradition, and bases its extradition decisions on diplomatic considerations without regard to such constitutionally impermissible factors as race, color, sex, national origin, religion, or political beliefs, and in accordance with such other exceptional constitutional limitations as may exist because of particularly atrocious procedures or punishments employed by the foreign jurisdiction.") (internal citations omitted). It is important that the United States be regarded in the international community as a country that honors its agreements, particularly so that it can similarly ask that other nations meet their reciprocal obligations to the United States. *See, e.g.*, *United States v. Leitner*, 784 F.2d 159, 160-61 (2d Cir. 1986) (the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons). When, as here, the evidence submitted by the requesting country fulfills the relevant legal and treaty requirements, the Court should "certify the same" to the Secretary of State, who will decide whether to surrender the fugitive "according to the treaty." 18 U.S.C. § 3184. Accordingly, for the reasons set forth above and in the Government's memoranda in support of Hiya's extradition, the Government respectfully submits that this Court has jurisdiction over Hiya and requests that the Court certify Hiya's extraditability to the Secretary of State for a final decision on Hiya's extradition.

                    Respectfully submitted,

                    EDWARD Y. KIM
                    Acting United States Attorney

By:   /s/ *Dana R. McCann*
       Dana R. McCann
       Assistant United States Attorney
       Tel: (212) 637-2308

cc: Counsel for Eran Hiya (via ECF)